**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3-23-16

-------------------------------------------------------------X

THE INSURANCE COMPANY OF THE STATE OF:
PENNSYLVANIA,

          **Plaintiff,**

    - against -

**LAKESHORE TOLTEST JV, LLC, et al.,**

          **Defendants.**

1:15-cv-1436

**OPINION & ORDER**

-------------------------------------------------------------X

RACHMALE ET AL.,

          **Third-Party Plaintiffs,**

    - against -

**GRIDIRON CAPITAL, LLC.,**

          **Third-Party Defendant.**

-------------------------------------------------------------X

**ANDREW L. CARTER, JR., District Judge:**

## I.  INTRODUCTION

    This dispute concerns the scope of an indemnity agreement between plaintiff Insurance

Company of the State of Pennsylvania ("ICSP") and defendants Lakeshore Toltest JV, LLC,

A&H/Lakeshore JV, LLC, A&H Contractors, Inc., Grand Construction, Inc., Avinash Rachmale,

Hema Rachmale, Ketul J. Parikh, Kavita Parikh, Thomas E. Hardiman, Sr., and Gloria

Hardiman. ICSP's suit seeks enforcement of the indemnity agreement for over $100 million in

claims stemming from the breach of several construction contracts.

    Certain of the defendants in that suit brought a third-party complaint against Gridiron

Capital, LLC ("Gridiron"). They ask for two forms of relief: a declaratory judgment that the

indemnity agreement that they signed with ICSP also binds Gridiron as an indemnitor and

equitable contribution from Gridiron to any amount that they must pay ICSP. Gridiron now moves to dismiss the third-party complaint. Because Gridiron did not assume an obligation to indemnify by the terms of the indemnity agreement itself, the Court grants Gridiron's motion to dismiss the third-party complaint.

## II.  BACKGROUND

A previous order in this case denied ICSP's motion for a preliminary injunction and provided factual background. See Ins. Co. of the State of Pennsylvania v. Lakeshore Toltest JV, LLC, 2015 WL 8488579 (S.D.N.Y. Nov. 30, 2015). This order presumes familiarity with that background, but supplements it with allegations from the third-party plaintiffs' complaint against Gridiron.

On September 15, 2009 the third-party plaintiffs agreed to indemnify ICSP against loss on bonds it had issued as performance guarantees on construction projects. Third-Party Complaint ("TPC") ¶ 1. ICSP now alleges that because the construction projects were not performed, it has incurred losses on the bonds and is entitled to indemnity for those losses in accordance with the indemnity agreement. Id. ¶ 3.

### A.  The September 15, 2009 indemnity agreement

Under the indemnity agreement, an "Indemnitor" agrees "to keep indemnified the Surety [ICSP] from and against any and all liability for any Loss." Bodner Decl (ECF No. 52), Ex. A ¶ 3.2.[1] An "Indemnitor" is defined initially as either one of six specifically listed parties or two

---

[1] Both the September 15, 2009 indemnity agreement and the Conditional Financing and Trust Agreement are properly considered by the Court on this motion to dismiss because "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (internal quotations and

specifically listed "Principals." Id., Ex. A at 1. But a "Principal" includes both the two parties

listed and "any of its [or their] present or future direct and indirect subsidiaries or any Affiliates."

Id. An "Affiliate," in turn, is any "Person directly or indirectly controlling, controlled by[,] or

under common control with" another. Id., Ex. A at 2. "Control" exists "if the controlling Person

owns 10% or more of any class of voting securities (or other ownership interests) of the

controlled Person or possesses, directly or indirectly, the power to direct or cause direction of the

management or policies of the controlled Person, whether through ownership or stock, by

contract or otherwise." Id.

   This ever-expanding definition of an indemnitor is limited, however, by a provision titled

"Amendments," which specifies that "[t]he addition to this Agreement of any Indemnitor or

Principal, including any entities acquired after the date of execution of this Agreement, may be

effected by written amendment executed by such Indemnitor or Principal only, notwithstanding

any language herein to the contrary." Id., Ex. A ¶ 7.1.

## B. Gridiron's control of one of the principals of the September 15, 2009 indemnity agreement

   One of the "Principals" listed in the indemnity agreement is Lakeshore Engineering

Services, Inc. ("Lakeshore"). Id., Ex. A at 1. In 2010, Lakeshore merged with TolTest, Inc. to

form Lakeshore TolTest Corporation ("LTC"). TPC ¶ 16. On or about April 21, 2011, Gridiron

formed Gridiron LTC Investment, LLC ("Gridiron LTC") in order to be a formal purchaser of

LTC stock. Id. ¶ 29. Gridiron LTC was controlled through Gridiron's co-founder, principal, and

managing partner, Eugene P. Conese, Jr, who appointed himself its President and approved a 10-

---

citations omitted). The third-party complaint attached the indemnity agreement as an exhibit
when it attached ICSP's original complaint with exhibits, which had also attached the agreement.
The third-party complaint also references and relies heavily upon the terms and effect of both
agreements, making them integral to the complaint itself.

year Management Agreement between Gridiron and LTC. Id. ¶ 30. Gridiron LTC also purchased

100% of LTC's preferred stock. Id. ¶ 31.

### C. The Conditional Financing and Trust Agreement

In late 2013, LTC informed ICSP that it was not financially able to satisfy its obligations

under the construction contracts for which ICSP had issued surety bonds. Id. ¶ 44-45. As a result,

Gridiron, acting through either Conese or other executives, caused LTC to enter a Conditional

Financing and Trust Agreement ("CFTA") with ICSP. Id. ¶ 46. The CFTA fully incorporated the

September 15, 2009 indemnity agreement and acknowledged and reaffirmed ICSP's rights under

it. Id. ¶ 48. Gridiron was aware of the terms of the indemnity agreement and its effect on its own

obligations and rights, because the indemnity agreement was attached to the CFTA. Id. ¶ 47. The

third-party plaintiffs did not sign or execute the CFTA themselves, which was instead signed by

corporate officers that Gridiron had put in place. Id. ¶ 53; Bodner Decl, Ex. B at 28-29.

### D. The third-party complaint

The third-party complaint concedes that Gridiron was not added as an indemnitor to the

original indemnity agreement by the CFTA and that Gridiron did not execute a writing

expressing its intent to become an indemnitor. Id. ¶ 52. Instead, it contends that (1) because

Gridiron "controlled" LTC within the meaning of the term in the indemnity agreement, and (2)

because it used that control to negotiate the CFTA and to force LTC to sign it, and (3) because

the CFTA fully incorporated the terms of the indemnity agreement, (4) Gridiron was also an

"affiliate" of a "principal" under the indemnity agreement and (5), therefore, both a "principal"

and an "indemnitor" itself. Id.

### III.  ANALYSIS

### A. Legal standard for a motion to dismiss a contract claim

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). On a motion to dismiss, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in the plaintiff's favor. Harris v. Mills, 572 F.3d 66, 71 (2d Cir.2009). But to satisfy Rule 12(b)(6), a plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir.2010). Ultimately, on a motion to dismiss "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotations and citation omitted). Notwithstanding, "[w]here there is no ambiguity to a contract and the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may be resolved on a motion to dismiss." Oppenheimer & Co. v. Trans Energy, Inc., 946 F. Supp. 2d 343, 349 (S.D.N.Y. 2013) (internal quotations and citation omitted).

**B.  Discussion**

The third-party complaint must be dismissed because under the plain terms of the indemnity agreement, Gridiron never executed a written amendment adding itself as an indemnitor or principal. Section 7.1 of the indemnity agreement states that "[t]he addition to this Agreement of any Indemnitor or Principal, including any entities acquired after the date of execution of this Agreement, may be effected by written amendment executed by such Indemnitor or Principal *only, notwithstanding any language herein to the contrary.*" Id., Ex. A ¶

5

7.1 (emphasis added). Thus, the only way for a party to assume an indemnity obligation is for the putative indemnitor itself to execute a written amendment. Further, that remains true no matter how expansively the agreement may elsewhere define the term indemnitor.

The third-party plaintiffs do not argue that section 7.1 is ambiguous, even alleging two instances in which it was followed to the letter by other companies that were added as indemnitors by written amendment. TPC ¶ 24. They instead seek to narrow its application to "this Agreement" alone—meaning the indemnity agreement, as opposed to the CFTA. Because Gridiron's obligation to indemnify arose under the CFTA, they argue, it was not dependent on compliance with section 7.1. That argument is unpersuasive.

Gridiron was not a party to the CFTA, which was an agreement between LTC and certain of the third-party plaintiffs on the one hand and ICSP on the other. Bodner Decl, Ex. B at 1. In fact, the CFTA fails even to mention Gridiron, let alone assign it an obligation to indemnify. Nonetheless, according to the third-party plaintiffs the CFTA binds Gridiron because it fully incorporated and reaffirmed the indemnity agreement. And because that agreement's definitional provisions qualify Gridiron as an indemnitor, it assumed an indemnity obligation.

But if the indemnity agreement was fully incorporated, as the third-party plaintiffs allege, then section 7.1 holds the same force whether read in the context of the indemnity agreement alone or as an incorporated provision of the CFTA. In other words, regardless of under what contract Gridiron is alleged to have assumed the indemnity obligation—the original agreement or the CFTA that fully incorporated the original agreement—it was required to execute a written amendment in order to assume an indemnity obligation. By the third-party plaintiffs' own allegations, it never did so.

The unambiguous language of the indemnity agreement, which this Court assumes was fully incorporated into the CFTA as per the third-party plaintiffs' allegations, requires the execution of a written amendment to assume an indemnity obligation. Since no such amendment was executed here, the third-party complaint must be dismissed. In light of this finding, the Court need not address Gridiron's alternative arguments.

## IV.   CONCLUSION

For the foregoing reasons, Gridiron's motion to dismiss the third-party complaint is GRANTED. The Clerk of Court is respectfully requested to close the motion at ECF No. 50. **SO ORDERED.**

Dated:      New York, New York
            March 24, 2016

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**